# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUINTEZ TALLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>SEC. JOHN E. WETZEL, PA DEPARTMENT OF CORRECTIONS; WARDEN ROBERT GILMORE; CSA TRACY SHAWLEY; CAPTAIN ESMOND, C/O RIX, C/O R. POLYBANK, AND UNKNOWN 3RD SHIFT C/Os,<br><br>    Defendants. | Civil Action No.  2: 18-cv-0230<br><br>Chief United States Magistrate Judge Cynthia Reed Eddy |

## MEMORANDUM OPINION[1]

Pending is Defendants' motion for summary judgment, with brief in support (ECF Nos. 59 and 60) and Plaintiff's response in opposition (ECF No. 71). The issues have been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 61 and 70).

After carefully considering the motion, the memoranda of the parties in support and opposition to it, the material in support and opposition to it, the relevant case law, and the record as a whole, the Court will grant in part Defendants' motion for summary judgment and deny in part Defendants' motion.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings here, including trial and the entry of a final judgment. *See* ECF Nos. 15 and 24. While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is unaware of any decision holding that consent is necessary from defendants who are both unserved and unidentified. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded").

**Factual Background**

Plaintiff, Quintez Talley, is a Pennsylvania state prisoner who is currently confined at SCI-Fayette. This lawsuit arises out of events which allegedly occurred during a seventeen-day period (February 19, 2016, through March 6, 2016) when Plaintiff was housed in a Psychiatric Observation Cell ("POC") at SCI-Greene. At the heart of the Complaint is Talley's allegation that the corrections officers on the third shift,[2] 10:00 PM to 6:00 AM, played the volume of a television situated at or near their desk at a "disturbingly loud volume" leading Talley to have chronic sleep deprivation and headaches. He alleges that the officers played the television at a loud octave "all night, every night." Talley's cell purportedly was directly in front of the officers' desk. Talley alleges that he attempted to address the issue with the corrections officers and he complained to Defendant Esmond, but nothing was ever done about it. From March 1, 2016, through March 6, 2016, Talley filed seventeen grievances complaining about the volume of the television. Talley alleges that Defendants knew of this practice months before February 19, 2016, but did nothing to correct the situation.

Talley also alleges that Defendant Rix intentionally loudly played the television in an effort to deprive him of sleep in retaliation for a lawsuit Talley had filed against Defendant Rix and other corrections officers, who are not defendants in this lawsuit.[3] And he contends that as a result of Defendant Wetzel's failure to properly train corrections officers this practice was

---

[2]   The corrections officers on the third shift were C/O Rix, C/O Polyblank, and other unnamed corrections officers.

[3]   The record reflects that before bringing the instant case, Talley filed a lawsuit in the Court of Common Pleas of Greene County over the same complaints about the volume of the television which underlie this action, although during a different time period, September 17, 2015, through September 22, 2015, and again from October 3, 2015 through October 8, 2015. *Talley v. Gilmore, et al.,* No. AD 53-2016 (Greene County, PA). Corrections Officer Rix is a named defendant in that case. The record does not reflect the current status of that state court litigation.

allowed to develop and continue. Talley contends that Defendants' actions violated his constitutional rights under the Eighth Amendment as Defendants were deliberately indifferent to the risk of harm he suffered — sleep deprivation — and that Defendant Rix's actions were retaliatory thereby violating his rights under the First Amendment.

Along with contending that Defendants violated his constitutional rights, Talley also contends that Defendants violated his rights under the Americans with Disabilities Act ("ADA"). He argues that (1) Defendants discriminated against him in violation of Title II of the ADA when Defendants denied him a reasonable accommodation — reducing the volume of the television, and (ii) Defendant Rix retaliated against him in violation of the ADA.

Following the Court's ruling on Defendants' motion to dismiss (ECF No. 25), these claims remain: an Eighth Amendment claim against Defendants Wetzel, Gilmore, Esmond, Rix, Polyblank, and the unknown 3rd shift corrections officers; a First Amendment retaliation claim against Corrections Officer Rix; and claims under Title II and Title V of the Americans with Disability Act against the DOC, Wetzel, Gilmore, Esmond, Shawley, Rix, and Polyblank.

Discovery has closed and Defendants have filed the instant motion for summary judgment in which they seek summary judgment on all of Talley's claims. The motion is ripe for disposition.

**Standard of Review**

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'affect[s] the outcome of the suit under the governing law'." *Bland v. City of Newark,* Nos. 17-2228, 17-2229, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary

judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013). Rather, "[i]n determining whether a genuine dispute of material fact exists, [the Court] view[s] the underlying facts and draw[s] all reasonable inferences in favor of the party opposing the motion." *Bland*, 2018 WL 3863378 at *3 (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)).

## Discussion

A. <u>John Doe Defendants</u>

As an initial matter, the Court notes that Talley asserts constitutional violations against fictitious "unknown 3rd shift c/os." The use of fictitious defendants is permissible "until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009). Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21; *see also Parker v. United States*, 197 F. App'x 171, 173 n. 1 (3d Cir. 2006) (affirming dismissal of John Doe defendants where "[d]espite ample opportunity to do so, the John Doe defendants were never identified and served with the complaint"). "[I]n the adversarial system of litigation the plaintiff is responsible for determining who is liable for [his] injury." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 212 (3d Cir. 2006) (citation omitted). Thus, fictitious parties should be dismissed if they are left unidentified at the close of discovery. *Hindes v. F.D.I.C.,* 137 F.3d 148, 155 (3d Cir. 1998). As a result, if a plaintiff fails to amend the complaint identifying the unnamed fictitious defendants, a court may dismiss those defendants before ruling on a summary judgment motion*. Blakeslee*, 336 F. App'x at 250.

Here, Talley never amended his complaint to properly identify and serve the unnamed and "unknown 3rd shift c/os" and discovery has now closed. As a result, because the complaint was never amended and the fictitious defendants were never properly named or served, these defendants will be dismissed before the Court rules on the pending summary judgment motion.

B.     Claims Brought Under 42 U.S.C. § 1983

Talley has brought his constitutional claims against Defendants under 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Defendants do not dispute that at all times material to this lawsuit they were acting under the color of state law. As a result, the Court's analysis must focus on whether Defendants deprived Talley of a right secured by the Constitution or laws of the United States.

1.     *Eighth Amendment Claims*

The Eighth Amendment as applied to the states through the Fourteenth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986). The United States Supreme Court has interpreted this prohibition to impose affirmative duties on prison officials to "provide humane conditions of

5

confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Allah v. Bartkowski*, 574 F. App'x 135, 138 (3d Cir. 2014) (quoting *Betts v. New Castle Youth Dev. Ctrs*., 621 F.3d 249, 256 (3d Cir. 2010)).  When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, the relevant inquiry is whether the prisoner has been deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *Atkinson v. Taylor*, 316 F.3d 257, 272 (3d Cir. 2003). A prisoner must establish that he has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Court have recognized that sleep constitutes a "basic human need" and conditions designed to prevent sleep may violated the Eighth Amendment.  *See, e.g.*, *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). That said, the Supreme Court has recognized that not every discomfort or inconvenience experienced by prisoners implicates the Eighth Amendment.  *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).  Thus, "only those deprivations denying the minimalized civilized measures of life's necessities 'are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id*. at 9 (citation omitted).

      a.      <u>Were Prison Officials "Deliberately Indifferent" To The Risk of Harm</u>

In support of their motion for summary judgment, Defendants argue as follows:

> Nothing in the record or the Complaint can establish that Talley was exposed to a substantial risk harm must less that the DOC Defendants contributed to or disregarded serious harm to the Plaintiff.  Moreover, Talley asserts that the problem was not properly addressed; however, the time span of the alleged high volume, according to Talley's own pleadings and grievances, lasted only a few hours a day for approximately two weeks.

Defs' Br. at 7.  Talley responds that Defendants knew about this practice as he had complained about the overnight volume of the television when he was housed in POC on prior occasions, that the volume of the television violated a March 31, 2015 memorandum regarding television

6

usage for the RHU pods and POC, Exh. 71-3,[4] and that he complained to the corrections officers on the third shift and to Defendant Esmond about the volume of the television, all to no avail.

The parties disagree over how loud the television was. The parties disagree over whether the March 31, 2015, memo applies to the POC. The parties disagree over whether Talley had voiced a concern to the officers on the third shift about the level of the television noise. These are all disputes of material issues of fact which preclude summary judgment.

The record before the Court also reflects that before Talley's February 19, 2016, admission to the POC, he had filed several grievances about the excessive volume of the television overnight during prior admissions to POC and Defendants knew that Talley believed the noise was affecting his sleep and health. *See* Pl's Exh. 1 (ECF No 71-1).

Given the positions of the parties, it should be for the jury to decide whether Defendants' conduct rises to the level of deliberate indifference toward Talley.

      b.      <u>Lack of Personal Involvement</u>

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.' " *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Supervisory employees cannot be held liable for their subordinates' actions purely on a respondent superior basis. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, n. 58 (1978). In advancing any § 1983 claim against prison officials, a plaintiff may not rely only on a respondeat superior theory of liability. *Rode v. Dellarciprete*, 845 F.2d 1195,

---

[4] The memo Talley relies on is dated March 31, 2015, from RHU Lieutenant Patrick Braunlich for Wallace Leggett, Major of the Guard, is addressed to "Inmates in the RHU," the subject of which is "TV usage for the RHU pods and POC  . . . ." (ECF No. 71-3).

1207 (3d Cir. 1988). "Rather, a plaintiff must aver facts to show the defendant's personal involvement in the alleged misconduct. Personal involvement requires particular 'allegations of personal direction or of actual knowledge of acquiescence." *Dooley v. Wetzel,* No. 19-1684, -- F.3d --, 2020 WL 1982194 at *4 (3d Cir. Apr. 27, 2020) (citing *Rode*, 845 F.2d at 1207)).

There are "two general ways" in which a supervisor-defendant may be liable under § 1983: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The United States Court of Appeals for the Third Circuit explained these two general types of supervisory liability as follows:

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190–91 (3d Cir. 1995) ). "Failure to" claims—failure to train, failure to discipline, or, as in the case here, failure to supervise—are generally considered a subcategory of policy or practice liability.

*Barkes v. First Correctional Med., Inc.,* 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, -- U.S. --, 135 S. Ct. 2042, 2043 (2015).

Defendants Wetzel, Gilmore, and Esmond argue that they are entitled to summary judgment as Talley has failed to establish their personal involvement in the underlying violations. Talley alleges that Defendant Wetzel is liable for his failure to train "his subordinates on how to interact, communicate and provide adequate care to prisoners on the DOC's" mental health roster. (Complaint ¶¶ 22, 25, ECF No. 1). The Court finds that Talley has produced no evidence from which a reasonable fact finder could find that any allegedly

inadequate mental health training created an unreasonable risk of harm that was known to Wetzel. Thus, summary judgment will be granted to Wetzel on Talley's § 1983 claims.

But genuine issues of material fact exist over the personal involvement of Defendants Gilmore and Esmond which preclude summary judgment. For example, Talley argues that both Gilmore and Esmond were aware of the March 31, 2015, memo, yet did nothing to ensure that the corrections officers in the POC area complied with the requirements. Defendants respond that the March 31, 2015 memo "refers to the L-5 RHU of which POC is not and may be subjected to different practices therapeutic in nature for those temporarily housed there." Initial Review Response prepared by Defendant Esmond, Grievance No. 615420, 4/2/2016 (ECF No. 60-4 at 1). Talley contends he complained to Defendant Esmond about the volume of the television and nothing changed. Defendant Esmond contends that he investigated and found no further inquiry was warranted. Talley argues that both Gilmore and Esmond knew that he had filed grievances many times regarding the volume of the television in POC, and yet nothing ever changed.

Given these disputes, it should be for the jury to decide the level of personal involvement of Defendants Gilmore and Esmond in Talley's alleged Eighth Amendment violation.

2.   *First Amendment Retaliation Claim Against C/O Rix*

Plaintiff claims that Defendant Rix intentionally played the television at a high volume in retaliation for Talley filing a lawsuit against Rix and other officers.[5]

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire

---

[5] Although Defendants cite to an Affidavit of Defendant Rix, such affidavit is not contained in the summary judgment record.

to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). To state a prima facie case of First Amendment retaliation, a prisoner plaintiff must show:

1) The conduct in which he was engaged was constitutionally protected;

2) He suffered "adverse action" at the hands of prison officials; and

3) His constitutionally protected conduct was a substantial or motivating factor between the exercise of his constitutional rights and the adverse action.

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2004). If a plaintiff can meet his prima facie case, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

Given the arguments of the parties, the Court finds that summary judgment should be denied on Talley's retaliation claim as there are disputed genuine issues of material fact, which if resolved in Talley's favor, would allow a reasonable factfinder to conclude that Talley's constitutional rights were violated.

C.  <u>Claims Brought Under the Americans with Disabilities Act</u>

Together with asserting constitutional claims against the Defendants under § 1983, Talley also brings two claims under the ADA. Talley states that his claim against Defendants DOC, Wetzel, Gilmore, Esmond, Shawley, and Rix "arises from their failure to make reasonable accommodations and/or modifications to accommodate his disability" and that Defendant Rix's actions were in retaliation "to punish Plaintiff for his filing of a lawsuit." Pl's Br. at 13-14 (ECF No. 71).

1. *Title II – Discrimination Under the ADA*

Title II of the ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in the provision of services, programs, and activities. *See Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015); 42 U.S.C. § 12132. To allege a prima facie violation, the plaintiff must establish that (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) <u>by reason of his disability</u>." *Haberle v. Troxell*, 885 F.3d 171, 178–79 (3d Cir. 2018) (emphasis added) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

Talley alleges his request to have the television turned off at a given hour was a reasonable accommodation and Defendants discriminated against him by refusing to do so. Defendants argue that "the nuisance of having a TV played at a loud volume does not constitute a claim under the ADA." Defs' Br. at 14 (ECF No. 60).

A review of the summary judgment record reveals that Defendants are entitled to summary judgment on this claim. Talley has produced no evidence to support his claim under the ADA. While Talley has regurgitated black letter law on an ADA discrimination claim, the Court concludes that he has presented no evidence from which a reasonable factfinder could find that he was subjected to the loud television volume "by reason of his disability." *Haberle*, 885 F.3d at 178-79.  Of course, the Court has found that questions remain regarding the constitutionality of Defendants' behavior, but those questions begin and end there. After careful review, the Court concludes that this claim arises under the Eighth Amendment and not under the ADA.

2.   *Title V - Retaliation*[6]

Unlike a discrimination claim under the ADA, a claim for retaliation under the ADA does not require a plaintiff to demonstrate that he is disabled. "The ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) (emphasis added). To prove a prima facie case of retaliation under the ADA, the plaintiff must demonstrate that (1) he engaged in a <u>protected activity under the ADA</u>; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Krouse*, 126 F.3d at 500.

As discussed *supra*, Talley's request to have the television turned off at a given hour does not constitute a protected activity under the ADA. Defendants are thus entitled to summary judgment on Talley's ADA retaliation claim.

**Conclusion**

For all these reasons, Defendants' motion for summary judgment will be granted in part and denied in part. Summary judgment will be granted on Talley's Eighth Amendment claim against Defendant Wetzel and granted in its entirety on Talley's ADA discrimination claim and ADA retaliation claim.

As to Talley's remaining claims, it is for a jury to decide the genuine issues of material fact over which the parties disagree. As a result, summary judgment will be denied on Talley's Eighth Amendment claims against Gilmore, Edmond, Rix, and Pollyblank and denied on Talley's First Amendment retaliation claim against Defendant Rix.

---

[6] Talley requests that the Court analyze his ADA retaliation claim with his First Amendment retaliation claim. This request is denied because the elements of the two retaliation claims are not the same.

The fictitious defendants, "unknown 3rd shift C/Os" will be dismissed pursuant to Federal Rule of Civil Procedure 21.

An appropriate Order follows.


Dated:  May 4, 20202                              /s Cynthia Reed Eddy
                                                              Cynthia Reed Eddy
                                                              Chief United States Magistrate Judge

cc:    QUINTEZ TALLEY
       KT 5091
       SCI Fayette
       48 Overlook Drive
       LaBelle, PA 15450-0999
       (via U.S. First Class Mail)

       All counsel of record
       (via ECF electronic notification)